UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-281-FDW
(3:16-cr-59-FDW-1)

| | |
|---|---|
| SAAD SUBHI BASHA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1). Also pending are the Government's Motion to Dismiss and Response to Motion to Vacate, (Doc. No. 6), the Government's Amended Motion to Dismiss, (Doc. No. 8), Petitioner's Pro Se Motion for Leave to File an Amended Motion to Vacate, (Doc. No. 13), and the Government's Motion to Dismiss and Response to Amended Motion to Vacate, (Doc. No. 15).

**I.  BACKGROUND**

**A. Petitioner Flies Large Quantities of Marijuana from California to Western North Carolina on Behalf of an Interstate Drug-trafficking Organization**

On March 16, 2013, Petitioner Saad Basha, a commercial pilot, flew a plane containing a large quantity of marijuana from California to western North Carolina. (Crim. Case No. 3:16cr59, Doc. No. 15 at 1-2: Factual Basis). Petitioner was working for a drug-trafficking organization and knew he was transporting marijuana. (Id.). The March 16 trip was one of at least three flights he piloted on the conspiracy's behalf, during which he transported at least 50 pounds of marijuana. (Id., Doc. 26 at 4-5: PSR).

1

Two days before the March 16 trip, Petitioner made two deposits of $9,900 into his bank account. (Id., Doc. No. 15 at 2). The deposited funds represented advance payments for his services as a pilot for the conspiracy. (Id.). Petitioner later withdrew $6,000 and $9,900 in cash. (Id.). Petitioner structured these transactions to avoid the currency-transaction-reporting requirement that would be triggered by a transaction involving more than $10,000, and to conceal the relationship between the funds and Petitioner's drug-trafficking activity. (Id.).

**B. Petitioner Pleads Guilty to Drug-trafficking and Money-laundering Offenses and Stipulates to a 30-month Sentence in Exchange for Concessions from the Government**

Special Agent Ubaldo Rios with Homeland Security Investigations filed a criminal complaint against Petitioner in November 2015, alleging drug-trafficking, money-laundering, and structuring violations. (Id., Doc. No. 1 at 1). In an affidavit accompanying the complaint, Rios stated that government officials encountered Petitioner at a Charlotte, North Carolina, airport on or about March 17, 2016, and that after Petitioner returned to the air, he "ejected dozens of pounds of marijuana from the aircraft as observed by an FAA official on the ground." (Id., Doc. No. 1 at 3). Rios also affirmed that investigators had listened to a consensually recorded telephone conversation Petitioner placed to a co-conspirator to obtain payment for transporting marijuana. (Id.). Rios asserted that investigators had debriefed "[s]everal cooperating witnesses" about Petitioner's marijuana-trafficking activities and that the amount known to Petitioner was at least 100 kilograms but less than 400 kilograms. (Id.). Rios stated in the affidavit that, before the March 2013 trip, Petitioner received four deposits of $9,900, two into his personal account and two into his business account, representing advance payments for his marijuana-trafficking activities. (Id.). According to Rios, these deposits were made in western North Carolina, and Petitioner made cash withdrawals in California on March 13 of

almost all of these funds. (Id., Doc. No. 1 at 3-4). Petitioner was arrested on December 1, 2015, a week after the criminal complaint was filed. (Id. at 3).

Petitioner made his initial appearance in this Court on December 22, 2015. He was represented by Anthony Brooklier, an attorney practicing in Los Angeles, California. (Id., Doc. No. 9: Motion for Leave to Appear Pro Hac Vice). Brooklier was later granted leave to represent Petitioner pro hac vice with the assistance of local counsel, Michael Jeffrey Greene. (Id., Doc. No. 11: Order).

Two months after Petitioner made his initial appearance, the Government charged him through a Bill of Information with conspiring to distribute and to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1); and conspiring to launder proceeds of unlawful activity, in violation of 18 U.S.C. § 1956(h). (Id., Doc. No. 14: Information). On the same day, the parties filed a plea agreement in which Petitioner agreed to plead guilty to both offenses. (Id., Doc. No. 16: Plea Agreement). The parties also agreed that a factual basis existed to support Petitioner's guilty plea, and the parties filed a written factual basis reciting facts consistent those described above. (Id., Doc. No. 15). The prosecutor, Brooklier, and Petitioner all signed the factual basis, in which Petitioner acknowledged he was aware of at least 80 kilograms of marijuana, and the parties reserved their right to argue for a drug-quantity finding of between 80 and 400 kilograms of marijuana. (Id. at 2-3). As part of the parties' plea agreement and "in exchange for the concessions made by the United States," Petitioner waived his right to appeal his conviction or sentence, except on grounds of ineffective assistance of counsel or prosecutorial misconduct. (Id., Doc. No. 16 at 5). Petitioner and Brooklier also signed the plea agreement. (Id. at 8).

Six weeks after the parties filed the plea agreement, a magistrate judge accepted Petitioner's guilty plea after conducting the colloquy required by Federal Rule of Criminal Procedure 11. (Id., Doc. No. 34: Plea Hr'g Tr.). At the beginning of the hearing, attorney Greene reported to the magistrate judge that Petitioner had asked him and Charlotte attorney Rob Heroy to serve as lead, rather than local, counsel and that he believed that Brooklier would be moving to withdraw because Petitioner did not "want[] his services anymore." (Id. at 2). Greene explained that he and Heroy had both entered general notices of appearance on Petitioner's behalf. (Id.). After waiving his right to a grand-jury indictment, id. at 4, Petitioner affirmed that he understood the charges against him and the maximum penalties he faced—up to five years in prison for the drug-trafficking offense and up to twenty years in prison for the money-laundering offense, id. at 6-8. Petitioner affirmed that he was, in fact, guilty of the offenses to which he was pleading guilty. (Id. at 10). Petitioner also affirmed that he had had "enough time to discuss with [his] attorneys any possible defenses [he might] have" and that he was "satisfied with the services of [his] attorneys." (Id. at 14). At the hearing's conclusion, the magistrate judge found that Petitioner's guilty plea was both knowing and voluntary. (Id. at 15).

The probation office prepared a presentence report in which the probation officer calculated a total offense level of 19 based on Petitioner's responsibility for between 80 and 100 kilograms of marijuana. (Id., Doc. No. 26 at 6-7). This offense level also included a two-offense-level reduction because Petitioner satisfied the requirements under the safety valve, U.S.S.G. § 5C1.2, and a three-offense-level reduction for acceptance of responsibility. (Id.). Based on an offense level of 19 and a criminal-history category of I, the Sentencing Guidelines advised a range of between 30 and 37 months in prison. (Id. at 10).

Two months after Greene and Heroy were retained to represent Petitioner, the parties filed a joint sentencing stipulation in which they recommended a 30-month sentence, at the low end of the Sentencing Guidelines range. (Id., Doc. No. 25: Joint Sentencing Stipulations). In this stipulation, signed by Heroy, Greene, and Petitioner, the parties explained that, in exchange for the Government's agreement not to object to the drug-quantity calculation or base offense level in the presentence report, Petitioner agreed not to seek a departure or variance from the advisory guideline range. (Id. at 1). The parties also agreed that a 30-month prison sentence was "sufficient but not greater than necessary to accomplish the goals of sentencing under 18 [U.S.C. §] 3553(a)." (Id.). Consistent with the parties' recommendation, this Court sentenced Petitioner to 30 months in prison. (Id., Doc. No. 35 at 13: Sentencing Hr'g Tr.).

**C. The Fourth Circuit Affirms this Court's Judgment, and Petitioner Moves to Vacate His Conviction**

Petitioner appealed his convictions, arguing that Brooklier provided constitutionally deficient representation in negotiating the parties' plea agreement and permitting the Government to use information Petitioner provided to investigators pursuant to a non-attribution agreement against Petitioner. (Fourth Circuit Case No. 16-4530, Doc. No. 21 at 3-5). Petitioner noted that Brooklier committed suicide shortly before Petitioner filed his appellate brief. (Id., Doc. No. 21 at 3). Petitioner also argued that the Government improperly used information obtained through the non-attribution agreement. (Id. at 6-7).

Petitioner attached to his brief and sought to include in the joint appendix on appeal a copy of the non-attribution agreement signed by the prosecutor, Petitioner's counsel, and Petitioner, in which Petitioner agreed to provide truthful and complete information about all criminal activity within his knowledge. (Id., Doc. 25 at 1: Ex. 1). In exchange, the Government

5

agreed that it would not use any of Petitioner's statements against him in the Government's case-in-chief at trial, except (1) in a prosecution for crimes of violence and (2) for purposes of impeachment, rebuttal, or countering a defense. (Id.). Petitioner also agreed that the Government could derivatively use his statements to pursue investigative leads suggested by his statements and that the Government could use information gained as a result of that further investigation against Petitioner. (Id.). The parties agreed that the Government could use any of Petitioner's statements against him if he violated the parties' agreement. (Id.).

The Fourth Circuit denied Petitioner's motion to include the non-attribution agreement in the joint appendix, noting that the agreement was not part of the record in this Court. United States v. Basha, No. 16-4530, 691 F. App'x 716 (4th Cir. June 8, 2017). The Fourth Circuit also affirmed this Court's judgment, finding "no evidence in the current record supporting [Petitioner's] ineffective assistance and prosecutorial misconduct claims." Id. at 717.

Nearly a year later, Petitioner timely filed his motion to vacate, asserting that his trial counsel provided constitutionally deficient representation by improperly advising him about the Government's ability to use information Petitioner provided during his cooperation with the Government. Petitioner also asserts that the Government violated its proffer agreement with him. The Government filed its Response and Motion to Dismiss on August 14, 2018, and an Amended Motion to Dismiss on the same day. On September 25, 2018, Petitioner filed a Motion for Leave to File an Amended Motion to Vacate, presenting additional arguments to his original motion. On December 6, 2018, the Government filed a Motion to Dismiss and Response to Amended Motion to Vacate. On January 22, 2019, Petitioner filed a Response to the Government's Motion to Dismiss. Thus, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. As discussed above, after examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines, 423 F.2d at 529.

## III. DISCUSSION

### A. Petitioner's Claim of Ineffective Assistance of Counsel Based on Counsel's Alleged Improper Advice Regarding the Parties' Plea Agreement

Petitioner first asserts, in his original motion to vacate, that Brooklier, who represented him during his initial plea negotiations and until the Rule 11 proceeding, was emotionally unstable and improperly advised Petitioner "about the use of the Proffer . . . and the way it was handled by the Government." (Doc. No. 3 at 4). Petitioner also asserts that there is "a significant constitutional question about the manner in which the plea agreement was handled by both counsel and the USA." (Id. at 5).

In response to the Government's first Motion to Dismiss, in which the Government argued that the motion should be dismissed as vague and conclusory, Petitioner filed an Amended Motion to Vacate, attaching the summary of a statement Petitioner gave to the Government on September 1, 2015. See (Doc. No. 13-1, Attachment C). During the interview, Petitioner described meeting his co-conspirator Ryan Tucker in early 2013 and told the prosecutor and an IRS special agent that Tucker "had a gun on him at the time" and "told Basha he would be transporting marijuana." (Id. at ¶ 4). Petitioner stated that he made three trips for

Tucker within a month and a half and that he transported a total of between 201 and 216 pounds of marijuana.  See (Id. at ¶¶ 9, 14, 20).  Petitioner provided telephone numbers for one of his co-conspirators and his supplier and provided some details about the trips, while stating that he did not know other details.  See (Id.).  Petitioner told the prosecutor and IRS special agent how much he was paid for the trips and described transporting cash for Tucker, but Petitioner did not describe deposits or withdrawals from business or personal accounts.  See (Id. at ¶¶ 11, 15, 16, 22).

Petitioner asserts in his Amended Motion to Vacate that Brooklier misadvised him when he negotiated the parties' plea agreement based on charges improperly derived from the statement Petitioner gave to investigators, in violation of the parties' non-attribution agreement. (Doc. 13-1 at 5).  Petitioner asserts that Brooklier "never made, or overlooked, the connection between the factual information in the charging document(s) and the non-attribution agreement" and that he should have required that the Government "honor its agreement not to use information provided by [Petitioner] to prosecute him."  (Id.).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).  Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or

unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Petitioner's ineffective assistance of counsel claim is without merit. The record establishes that, before Petitioner was charged, investigating agents and the Government had evidence of his criminal conduct based on the following: (1) government officials had witnessed Petitioner eject dozens of pounds of marijuana out of an airplane he was piloting shortly after speaking with officials at a Charlotte airport; (2) cooperating witnesses had reported to investigators in debriefings that Petitioner participated in a marijuana-trafficking conspiracy; and (3) a consensually recorded telephone conversation that Petitioner placed to a co-conspirator,

9

seeking payment for transporting marijuana. The record also establishes that, with Brooklier's assistance, the Government agreed to charge Petitioner through a Bill of Information with offenses that did not carry a statutory mandatory-minimum term of imprisonment, even though the evidence against Petitioner might have supported a charge carrying at least a mandatory-minimum sentence of five years in prison. Compare 21 U.S.C. § 841(b)(1)(B) (providing for a five-year mandatory-minimum sentence where the defendant is responsible for 100 kilograms or more of marijuana) with 21 U.S.C. § 841(b)(1)(D) (providing for a maximum of five years in prison where the defendant is responsible for less than 50 kilograms of marijuana). Petitioner's cooperation with the Government also resulted in a two-offense-level reduction under the safety valve.

In response to Petitioner's allegations, the Government has submitted the affidavit of Special Agent Ubaldo Rios with Homeland Security Investigations. Rios's affidavit makes clear that the Government had evidence of Petitioner's criminal conduct as early as three years before Petitioner gave his statement to investigators. See (Doc. No. 15-1: Declaration in Support of Criminal Complaint and Arrest Warrant for Saad Subhi Basha). Rios stated in the affidavit that government officials first encountered Petitioner at an airport in the Charlotte, North Carolina, area on March 17, 2013, and that an FAA official saw Petitioner, who was piloting a plane, eject "dozens of pounds of marijuana from [his] aircraft." (Id. at 2). Rios stated that investigators also had a consensually recorded phone conversation that Petitioner placed to a co-conspirator to obtain payment for transporting marijuana. (Id.). Rios also stated in his affidavit that "[s]everal cooperating witnesses ha[d] debriefed with law enforcement officials about [Petitioner's] marijuana trafficking activities" and that between 100 and 400 kilograms of marijuana was reasonably foreseeable to Petitioner during the course of his participation in the conspiracy.

(Id.).  Rios also described in his affidavit Petitioner's receipt of multiple deposits of $9,900 into his personal and business accounts and large withdrawals from those accounts in California.  (Id. at 2-3).

While Rios's affidavit is consistent with Petitioner's statement insofar as Petitioner admitted to transporting marijuana between California and North Carolina, Rios's affidavit does not rely on Petitioner's statement and, instead, relies on an FAA official's witnessing Petitioner drop marijuana during his March 17, 2013, trip; co-conspirator statements; and an investigation into Petitioner's bank accounts.  Additionally, the drug quantity alleged in the affidavit—at least 100 kilograms—is higher than the quantity Petitioner admitted transporting—at most, 216 pounds, which is less than 100 kilograms.  Nothing in the record suggests that the Government relied in any part on Petitioner's statement when it charged Petitioner with conspiring to possess with intent to distribute marijuana, conspiring to launder proceeds of drug trafficking, and structuring.  Petitioner has not, therefore, shown deficient representation, and his claim of ineffective assistance of counsel fails as a matter of law.

Additionally, Petitioner has not shown that he was prejudiced by Brooklier's representation.  It appears that Diane Bass represented Petitioner during the time the non-attribution agreement was negotiated, not Brooklier.  See (Doc. No. 7).  Even if Brooklier represented Petitioner, Petitioner has not produced any evidence that he misunderstood the agreement, which is plainly stated and signed by Petitioner, or that, had he received different advice about the agreement, a different result was reasonably probable.  Petitioner ultimately received a low-end sentence, and he benefited from two different sets of negotiations that yielded that sentence.  There is no evidence that had Brooklier conducted the negotiations differently, Petitioner would have received a lower sentence than the sentence he explicitly agreed to after he

entered his guilty plea. Finally, the Fourth Circuit found no evidence of ineffective assistance of counsel on the record. Petitioner has not presented new evidence in support of a claim of ineffective assistance of counsel.

In sum, Petitioner's ineffective assistance of counsel claim is without merit and will be dismissed.

### B. Petitioner's Claim of Prosecutorial Misconduct

Petitioner next argues that the Government violated the parties' non-attribution agreement. In his original motion to vacate, he failed to allege any facts to support this assertion or explain how the Government breached the parties' non-attribution agreement. He alleges in his Amended Motion to Vacate that the Government engaged in prosecutorial misconduct, in violation of his right to due process, by using information obtained during Petitioner's interview with the prosecutor and an IRS special agent to support charges against Petitioner, when the parties' non-attribution agreement precluded the use of that information in a prosecution against Petitioner.

To support a claim of prosecutorial misconduct, a defendant must show (1) that the prosecutor's conduct was improper and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. United States v. Caro, 597 F.3d 608, 624 (4th Cir. 2010). Petitioner's prosecutorial-misconduct claim fails for the same reason his claim of ineffective assistance of counsel fails. That is, Petitioner has not shown that the Government's case against him was based on any of the information Petitioner provided under the parties' non-attribution agreement against him. Instead, Rios's affidavit makes clear that investigators were aware, long before Petitioner provided his statement and from other sources, that Petitioner participated in a marijuana-trafficking conspiracy during which Petitioner

12

transported at least 100 kilograms of marijuana from California to North Carolina. Moreover, on direct appeal, the Fourth Circuit found no evidence in the record supporting a prosecutorial-misconduct claim where Petitioner's argument assumed, unsupported by any evidence in the record, that the Government's entire case depended on the statement he provided in March 2016, after he entered into the non-attribution agreement with the Government. As the Fourth Circuit found, this Court likewise finds that there is no evidence that the Government breached the parties' non-attribution agreement. Instead, the record reflects that the Government worked with Petitioner and his counsel to support a sentence at the low end of the range advised by the Sentencing Guidelines. Having failed to present any evidence that the prosecutor's conduct was improper, Petitioner's claim of prosecutorial misconduct fails.

In sum, Petitioner's prosecutorial misconduct claim is without merit and will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. The Government's Motion to Dismiss and Response to Motion to Vacate, (Doc. No. 6), the Government's Amended Motion to Dismiss, (Doc. No. 8), and the Government's Motion to Dismiss and Response to Amended Motion to Vacate, (Doc. No. 15) are **GRANTED**.

13

3. Petitioner's Pro Se Motion for Leave to File an Amended Motion to Vacate, (Doc. No. 13), is **GRANTED** to the extent that the Court has considered the additional arguments made in Petitioner's Amended Motion to Vacate.

4. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: February 1, 2019

Frank D. Whitney
Chief United States District Judge